## RUSSELL v. YOUNG et al.

### (Circuit Court of Appeals, Sixth Circuit. May 2, 1899.)

### No. 630.

1. CONTRACT FOR LEGAL SERVICES — CONSTRUCTION — AMOUNT OF COMPENSATION.

A contract between attorney and client for the rendition of legal services in connection with an estate to which the client was an heir, providing that the attorney's compensation should "in no event be more" than that received from other heirs similarly interested, nor more than a certain per cent. of the amount recovered for the client, does not fix the amount of compensation, but merely imposes maximum limits thereto, leaving the amount to be determined on a quantum meruit, within such limits.

2. SAME—EVIDENCE OF PRACTICAL CONSTRUCTION BY PARTIES.

Evidence of a practical construction placed on a written contract by the parties is not admissible to affect its construction by a court in an action thereon, where its terms are plain and unambiguous.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This is an action at law to recover compensation for legal services rendered by the plaintiff in error under a contract in these words:

"Whereas, George L. Carlisle is the attorney at law and in fact of Cornelia T. Young in all matters relating to her interests in the estate of Silas S. Stone and Margaretta Stone, both deceased: and whereas, it may become necessary or proper for him, in the discharge of his duties aforesaid, to have the assistance of an Ohio lawyer: Now, therefore, this shows that L. A. Russell, of Cleveland, Ohio, has been, and is hereby, retained and employed by George L. Carlisle, of New York City, to appear for Cornelia T. Young in any partition or other suit or proceeding which may be commenced or taken with respect to the settlement of her interest in the estates of Silas S. Stone and Margaretta Stone, both deceased, either or both, and to do and perform all things necessary for the speedy and complete settlement of said interest. Said Russell accepts said employment, and it is mutually agreed as follows: 1st. Said Carlisle shall be consulted as the principal or employing attorney herein in any such suit or proceeding hereunder (and as often as may be prior thereto) which said Russell shall commence or take, and (as near as may be) all papers necessary and of importance for the prosecution of said interest shall be first submitted to said Carlisle; and all payments on account or otherwise of said interest shall be made to said Carlisle as the attorney for said Young. 2nd. The compensation which said Russell may charge for such services shall in no event be more than he will charge and receive from either Silas S. Stone or his brother, Frank W. Stone, for like services, nor more than seven and one-half (7½) per cent. of the net amount of whatever recovery in cash shall be made through his efforts for said Cornelia T. Young during the continuance hereof, except that if a suit in equity (other than partition) or in law, for ejectment, shall be brought in the name of said Cornelia T. Young hereunder against the personal representatives, heirs, or next of kin of said Margaretta Stone or Silas S. Stone, deceased, or any other person or persons, to recover any moneys or other property now in the possession of said personal representatives, heirs, next of kin, or any other person, under a claim of title thereto or interest therein, but in which said Young is entitled to share, or if

such suit be brought against said Young, then and in any such event said Russell will charge and shall be entitled to receive for such services no more than ten (10) per cent. of the net final recovery therein to said Cornelia T. Young. It is also understood and agreed that in event that any real or other property belonging to said estates, or either of them, be, in the settlement of the same, recovered by said Russell for said Cornlia T. Young during the continuance hereof, and which shall be set apart and accepted by said Young, either in common with her said brothers or either of them, or in severalty, that said Russell, for the purpose of computing and collecting his compensation hereunder, shall be entitled to substitute the value of said Young's interest in such lands at the time as so much cash; and, if dispute shall arise as to the true value thereof, the same shall be finally determined by arbitration in the usual way. In witness whereof, we have hereunto set our hands and seals this 12th day of February, 1892.

"Signed, sealed, and delivered in the presence of James L. Barger.
                                                "George L. Carlisle."
                                                "L. A. Russell."

The defendants were Cornelia T. Young and husband, William S. Young, and George L. Carlisle. There was a jury, and verdict for plaintiff in error for a balance due under the contract of $3,348.89 against William Shipman Young and wife, Cornelia T. Young, and a verdict for George L. Carlisle. From the judgment thereon the plaintiff in error, L. A. Russell, has sued out this writ of error.

L. A. Russell, in pro. per.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

Mr. Russell's suit is based upon the claim that under the contract he is entitled to 7½ per cent. upon the value of Mrs. Young's share of $206,000, and he sues for the balance due him upon this basis, after crediting Mrs. Young with $4,506.49 collected and applied upon his fee. The defense was that the contract only provided that Mr. Russell's compensation should not exceed certain limitations therein mentioned, and did not otherwise settle or determine what his compensation should be. The circuit judge interpreted the contract according to the contention of the defendants in error, and held that Mr. Russell could only recover such compensation as his services were reasonably worth, but not to be more than he had charged and received from Silas M. Stone or Frank W. Stone for like services, nor more than 7½ per cent. of the aggregate value of money and land recovered as the share of his client, Mrs. Cornelia T. Young. This is the plain meaning of the contract under which Mr. Russell's services were rendered. It is true that the agreement does not say, in words, that Mr. Russell is to be paid according to the value of his services, or such compensation as is usual and reasonable between client and attorney under all the circumstances of the case. But in the absence of an express agreement the law supplies this term. Here the parties have chosen, however, to provide that such compensation shall "in no event be more than he will charge and receive from either Silas M. Stone or his brother, Frank W. Stone, for like services, nor more than seven and one-half per cent. of the net amount of whatever recovery in

cash shall be made through his efforts for said Cornelia T. Young during the continuance thereof." But it is asked why the parties did not plainly say that Russell's compensation should be a quantum meruit, if that was the intention? To say this was unnecessary. The law implied an agreement that one should pay and the other receive reasonable compensation, according to the value of the services rendered. But the law did not imply that a quantum meruit should not be more than the compensation charged another client having the same interest, nor that it should not be more than $7\frac{1}{2}$ per cent. upon the value of the share recovered. This limitation upon the compensation to be received was therefore placed upon the contract implied by law. But if the parties intended that $7\frac{1}{2}$ per cent. should be received, unless in the event a less sum was received from Mrs. Young's brothers, why were the words "not more than" and "no more than" inserted in the agreement? To say that they were inserted through "awkwardness of expression," as suggested by counsel, or ignorance of their legal effect, is no answer. Mr. Carlisle was the New York counsel for Mrs. Young, as well as her attorney in fact. Mr. Russell was retained to assist him. To assume that these able and experienced lawyers either awkwardly, carelessly, or ignorantly provided that Mr. Russell's compensation should "in no event be more than he will charge or receive from" the two brothers of Mrs. Young, also represented by him, and having identical interests, "nor more than seven and one-half per cent." upon the value of the share recovered for Mrs. Young, and yet mean, as is now contended, that Mr. Russell was to receive $7\frac{1}{2}$ per cent. upon the aggregate recovery, unless he received a less sum from his other clients, in which event he was to receive the same from Mrs. Young, is to abuse language, and do violence to the presumption that these gentlemen knew the meaning of the plain terms they employed in this agreement. Nor is this obvious construction affected by the subsequent clauses of the agreement. The clause providing for the contingency of an action of ejectment or a suit in equity (other than in partition), that Mr. Russell should charge or receive "no more than ten per cent. of the net final recovery therein," did not become effective. No such suit as there contemplated was ever brought or defended. But even in that clause we find the same idea of limiting a quantum meruit recovery so that the fee for services in such suit should not be ten per cent., but "no more than ten per cent." The last clause simply provides that, "in computing and collecting his compensation," land set apart to Mrs. Young shall be estimated as cash; being valued for that purpose by appraisers, if necessary.

Plaintiff offered to prove that he had deducted $7\frac{1}{2}$ per cent. of every cash collection made by him, and remitted the remainder to Mr. Carlisle, with a statement showing that he had retained $7\frac{1}{2}$ per cent. as compensation for the collection of the particular remittance, and that no exception had ever been taken by Mr. Carlisle to this construction of the contract. This evidence was offered for the purpose of showing that the parties had construed the contract according to the present contention of plaintiff in error. The evidence was rejected upon the ground that the contract was not doubtful, and needed no such side light in its interpretation. Evidence as to the practical

construction by the parties of a doubtful or ambiguous instrument is often of great importance. But such evidence can never control the effect, unless the legal meaning of the instrument is doubtful. Railroad Co. v. Trimble, 10 Wall. 367–377; Land Co. v. Doll, 35 Md. 89; Fogg v. Insurance Co., 10 Cush. 337. To give effect to a written agreement according to an erroneous construction placed upon it by the parties would not be to construe, interpret, and enforce the written agreement upon which the action is brought, but to enforce a new and different contract. No question of a change or variation in the agreement by mutual assent was in issue. There was therefore no error in the exclusion of the evidence offered. The case was properly submitted to the jury under instructions to find upon the evidence the value of the legal services of Mr. Russell, and deduct therefrom the amount he had received, and return a verdict for the balance due him, if any. There was no error in the admission or exclusion of evidence in this aspect of the case, and no exception to the charge, except in so far as it involved the interpretation of the contract already considered. Judgment affirmed.